STATE OF NEW YORK
SUPREME COURT _____ : _____ COUNTY OF ERIE

**PAID**
CHECK___ CASH___

In the matter of the Application of THE CAMPAIGN
FOR BUFFALO HISTORY,
ARCHITECTURE & CULTURE, INC.,

JUN 18 2012

Petitioner,

ERIE COUNTY
CLERK'S OFFICE

For a Judgment pursuant to Article 78 of the
Civil Practice Laws and Rules

**ORDER TO SHOW CAUSE
AND TEMPORARY
RESTRAINING ORDER**

Against

BUFFALO AND FORT ERIE
PUBLIC BRIDGE AUTHORITY

Index No. ~~I~~ 2012 - 1976

Respondent.

_____

On reading the attorney's Affirmation of Richard G. Berger, Esq. attorney for

Petitioner herein, let the Respondents herein, or their attorneys, show cause at a Special

Term of this Court, at the Courthouse located at ___ Part 6, 92 Franklin Street ~~Delaware Avenue~~, in the City of

Buffalo, County of Erie, State of New York, on the _6TH_ day of ~~June~~ July, 2012 at

_10:30_ p.m., why a judgment shall not be made herein granting the relief sought by the

Petitioner in the Verified Petition, and in particular, granting a preliminary injunction,

enjoining all further work in furtherance of the demolition of houses located at 757,

765, 771, 783, 791 & 793 Busti Avenue in Buffalo, New York.

FURTHER, Respondent BUFFALO AND FORT ERIE PUBLIC BRIDGE

AUTHORITY is hereby RESTRAINED from performing any further activity toward

the demolition or destruction of structures situate at 757, 765, 771, 777, 783, 791 & 793

Busti Avenue, including site clearance or any other activities at that site, and
*excluding sewer work and asbestos abatement not
involving demolition*

*2Me.NF*

Respondent shall preserve all furnishing and trim previously removed from said structures, until further Order of this Court, and, it is further

ORDERED, that personal service of this Order to Show Cause and supporting papers on the BUFFALO AND FORT ERIE PUBLIC BRIDGE AUTHORITY at its offices located at 1 Peace Bridge Plaza, Buffalo, NY 14213 by 5:00 PM on June 19, 2012, be effective service upon the Respondent. Responding papers, if any, shall be served by June 29, 2012. Reply due by July 3, 2012.

DATED:      Buffalo, New York
            June 18, 2012

Hon. Joseph A. Glownia

ENTER:

**GRANTED**

JUN 19 2012

BY Wendy K. Haseley
    WENDY K. HASELEY
    COURT CLERK

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

In the matter of the Application of
THE CAMPAIGN FOR BUFFALO HISTORY,
ARCHITECTURE & CULTURE, INC.,

                  Petitioner,

For a Judgment pursuant to Article 78 of the
Civil Practice Laws and Rules           **VERIFIED PETITION**

against                         Index No. _____

BUFFALO AND FORT ERIE
PUBLIC BRIDGE AUTHORITY,

                  Respondent.

Petitioner by its attorneys, Richard J. Lippes, Esq. and Richard G. Berger, Esq.,
respectfully alleges as follows:

## I.   **INTRODUCTION**

1.     This proceeding is brought pursuant to Article 78 of the Civil Practices
Laws and Rules seeking equitable relief to prevent the Respondents, and their agents and
those acting in concert with them, from proceeding with activities intending to culminate
in the demolition of properties situate at 757, 765, 771, 775, 783, 791 & 793 Busti
Avenue in the City of Buffalo, New York, herein designated as the "Busti Avenue
Structures" and to assure that the historic buildings that make up the Busti Avenue
Structures are properly preserved.

2.     This Petition is further brought to compel the Respondent to comply with
the New York State Environmental Quality Review Act, (hereinafter cited as "SEQRA"),
Environmental Conservation Law, Article 8, and the procedural provisions promulgated

pursuant thereto, the Public Trust Doctrine, Article 4-B thereof, and the and the Coastal

Zone Management Act 16 U.S.C.A. § 1453, and Title 19, Part 1204 of the New York

Code of Rules and Regulations (19 NYCRR Part 1204).

## II. **PARTIES**

3.  Petitioner, THE CAMPAIGN FOR BUFFALO HISTORY,

ARCHITECTURE & CULTURE, INC. (hereinafter referred to as "THE CAMPAIGN"),

is a not-for-profit corporation organized under the Not-for-Profit-Corporation Law of the

State of New York, with its principal place of business located at 14 Lafayette Square, in

the City of Buffalo, State of New York. THE CAMPAIGNis a membership organization

dedicated to the preservation of historic, architectural and cultural resources in the City of

Buffalo, County of Erie, State of New York.

4.  It is part of the mission of THE CAMPAIGN to (a) encourage, assist and

promote the conservation, protection and enhancement of the human setting of Niagara

and Erie Counties, including culturally significant buildings, structures, neighborhoods,

parks and view sheds, for the cultural, physical, spiritual and economic benefit of the

public; (b) to develop and disseminate concepts that promote neighborhood development

that is sensitive to the existing historic, architectural and cultural setting; (c) to

disseminate information and stimulate public interest in history, architecture and culture

through exhibits, educational programs, and the promotion of training, research and

techniques in those areas; and (d) to review laws affecting conservation, zoning and

planning, to determine whether such laws are being enforced, and to persuade the proper

officials to enforce such laws.

5.     THE CAMPAIGN has participated in a broad range of activities associated with the preservation of historical buildings and resources in Buffalo and Erie County.  It has published numerous articles it its newspaper, *Greater Buffalo*, and on its web log, *Greater Buffalo Blog*, on a variety of preservation issues.  The CAMPAIGN conducts regular tours for the public of historic buildings and places in Buffalo, New York, in which the Prospect Hill, Front Park neighborhood is prominently dispalayed.

6.     THE CAMPAIGN is familiar with the laws and regulations governing the identification and designation of historic buildings, structures and districts, and has participated in numerous efforts to have such resources protected at the federal, state and/or local level through the preparation of applications for such designation, and by working with the appropriate authorities to secure the same.

7.     THE CAMPAIGN has done extensive research on the history of Buffalo and has created and conducted architectural and historical tour programs for three organizations, including tours of Front Park and the Olmsted Parks System, as well as the historic neighborhood in the vicinity of the Peace Bridge.  THE CAMPAIGN is familiar with the history and historic cultural context of the Prospect Hill neighborhood, specifically Busti Avenue, Patrick Sole Park, and Front Park and its enormous significance as cultural landscape designed by of one of America's greatest designers, landscape architect Frederick Law Olmsted.

8.     THE CAMPAIGN has over four hundred (400) members who are keenly interested in the local history, architecture and culture, including many who live and work in proximity to the Prospect Hill neighborhood near the Peace Bridge plaza.  Since

its inception in 2002, THE CAMPAIGN has been working diligently for the preservation and restoration of the neighborhood.

9.     THE CAMPAIGN has published articles in its newspaper, its web log and in the *Buffalo News* setting forth its position regarding the impact of Respondents' project, which is the subject matter of this litigation, on the historic Prospect Hill neighborhood.

10.     The interests of the Petitioner, THE CAMPAIGN, and its members who live and work in the proximity of the Peace Bridge are within the zone of interests intended to be protected by the statutes upon which this action is based, namely, "SEQRA", Environmental Conservation Law § 8-103 et. seq., and the regulations promulgated thereunder.

11.     Members of THE CAMPAIGN live in close proximity to the Busti Avenue Structures, and their interests are directly affected by the Respondent's proposed demolitions.  They include:

a.     KATHLEEN MECCA, is a resident of the City of Buffalo, County of Erie, State of New York residing at 763 Columbus Parkway, Buffalo, New York 14213 in close proximity to the existing bridge and plaza operated by Respondent, Buffalo and Fort Erie Public Bridge Authority, and is a member of THE CAMPAIGN .

b.     PETER CERTO is a resident of the City of Buffalo, County of Erie, State of New York residing at 776 Columbus Parkway, Buffalo, New York 14213 in close proximity to the existing bridge and plaza operated by Respondent, Buffalo and Fort Erie Public Bridge Authority, and is a member of THE CAMPAIGN .

c.    ELIZABETH MARTINA is a resident of the City of Buffalo, County of

Erie, State of New York residing at 774 Columbus Parkway, Buffalo, New York

14213 in close proximity to the existing bridge and plaza operated by Respondent,

Buffalo and Fort Erie Public Bridge Authority, and is a member of THE

CAMPAIGN .

c.    MARK B. MITSKOVSKI is a resident of the City of Buffalo, County of

Erie, State of New York residing at 637 Busti Avenue, Buffalo, NY 14213 in

close proximity to the existing bridge and plaza operated by Respondent, Buffalo

and Fort Erie Public Bridge Authority, and is a member of THE CAMPAIGN .

12.    As such, said members, and many other members, view the important and

historic buildings on Busti Avenue, including Front Park and Patrick Sole Park, on a

daily basis, and are concerned that these scenic views and historic sites will be lost

without protection afforded by New York State Law to assure the continuing preservation

of these buildings and parklands, and further, they use and enjoy the site by walking on

the city street and parklands contiguous to the demolition site and expanded buffer zone,

and are concerned over the effect that demolition and future expansion of the plaza

through a buffer zone may have on this neighborhood and parklands, and to the extent

that the important historic and local properties are demolished, will lose the use and

enjoyment of the vista, parkland, and historic and cultural resources within the Prospect

Hill neighborhood, specifically associated with Busti Avenue, Patrick Sole Park, and

Front Park.

13.    The Respondent, BUFFALO AND FORT ERIE PUBLIC BRIDGE

AUTHORITY (hereinafter "PUBLIC BRIDGE AUTHORITY") is a municipal corporate

agency of the State of New York. It was formed by an act of the New York State Legislature in 1933. (Laws of 1933, ch. 824; Unconsolidated Laws, ch. 149, as amended, Laws of 1957, ch. 259) The purpose of the PUBLIC BRIDGE AUTHORITY is to operate the international bridge known as the "Peace Bridge" and its attendant facilities.

14.     By an Act of the Legislature of Canada in 1933, the Canadian Government created a similar BUFFALO AND FORT ERIE PUBLIC BRIDGE AUTHORITY to hold the assets of that portion of the bridge constructed on Canadian soil.

15.     On May 3, 1934, by Joint Resolution of the Congress of the United States, Congress consented to the State of New York establishing a "municipal corporate instrumentality of said State and with power to take over, maintain, and operate the present highway bridge over the Niagara River between the city of Buffalo, in the State of New York, and the village of Fort Erie, in the Dominion of Canada."

16.     The United States Plaza ("U.S. Plaza") facilities of the Peace Bridge are situated on 17 acres. The U.S. Plaza facilities are situated entirely within the municipal corporate boundaries of the City of Buffalo.  (**Exhibit "A"**)

17.     The PUBLIC BRIDGE AUTHORITY has members of the Board appointed by the Governor of the State of New York.

18.     The PUBLIC BRIDGE AUTHORITY is an entity separate and distinct from the Canadian entity of a similar name.

19.     The two entities combine as a Board of Directors to form a third entity that is also referred to as the "Buffalo and Fort Erie Public Bridge Authority."

20.     The PUBLIC BRIDGE AUTHORITY manages assets situated in both Buffalo, New York and Fort Erie, Ontario, Canada including but not limited to the Peace

Bridge, toll plazas and immigration facilities on both sides of the border and also ancillary administration buildings (hereinafter referred to collectively as the "Peace Bridge facilities").

21.     The PUBLIC BRIDGE AUTHORITY is governed by a board of directors made up of New York and Canadian designees.

### III. FACTS

22.     Upon information and belief, the Respondent, PUBLIC BRIDGE AUTHORITY, is the owner of seven (7) residential properties on Busti Avenue in Buffalo, New York situate at 757, 765, 771, 777, 783, 791 and 793 Busti Avenue, and has contracted to purchase an additional property on the same block, 775 Busti Avenue. (As shown within red line in **Exhibit B**)

23.     The Respondent, PUBLIC BRIDGE AUTHORITY, has recently begun work to demolish said houses, and intends to complete demolition in the coming weeks. Demolition work includes removal of underground sewer lines and other utilities, as well as interior removal of valuable historic features of the homes, such as fireplaces, mantles, doors, wood trim and other important features of the homes.

24.     Said houses are located in the one of the oldest and most historic neighborhoods in the City of Buffalo. The Prospect Hill neighborhood (hereinafter, the "Neighborhood") as shown on (**Exhibit C**) hereto is the area which surrounds the U.S. Plaza adjacent to the Peace Bridge. The Prospect Hill Neighborhood is defined generally as bounded by Busti Avenue, Niagara Street, Hampshire Street, Prospect Avenue, Porter Avenue and includes Front Park, one of Buffalo's Frederick Law Olmstead parks.

25.     This historic neighborhood predates the Peace Bridge facilities.

26.     The Prospect Hill neighborhood, is near the United States terminus of the Peace Bridge, and is one of Buffalo's oldest, most beautiful and densely populated neighborhoods.

27.     Residences in the neighborhood are primarily single and multi-family middle class houses on small lots. The houses range from moderately elegant along park frontage to relatively modest on most side streets. Many of the houses and other structures are over 100 years old.

28.     Busti Avenue is a street within the City of Buffalo's corporate boundaries owned by the City of Buffalo.

29.     There are many mature trees and much park space in the neighborhood including Front Park, Columbus Park, Patrick Sole Park, Prospect Park and LaSalle Park.

30.     Much of the Neighborhood is on a bluff commanding the most magnificent views of Lake Erie and the Niagara River available in or near the City of Buffalo.

31.     Prior to the construction of the Peace Bridge facilities, Front Park and adjacent Fort Porter (the location of the U.S. Plaza) were the most heavily used parks in the City of Buffalo park system and were considered the linchpin of the park system laid out for Buffalo by Frederick Law Olmsted.

32.     The Public Bridge Authority's current plaza is adjacent to dedicated parkland known as Patrick Sole Park. Patrick Sole Park is mapped on the City of Buffalo GIS as 888 Columbus Parkway. It is a municipal park located at the northeast corner of Massachusetts Avenue and Busti Avenue. It is also adjacent to the Episcopal Church

Home, an official Landmark designated by the City of Buffalo, which is also eligible for the National Register. **Exhibit D**

33. The Public Bridge Authority's current plaza is also adjacent to remnants of Frederick Law Olmsted's "The Bank", the circle Olmsted and Vaux firm designed to be the first view of Lake Erie as an iconic scenic vista. The site was chosen due to its natural location and situated on a bluff that overlooks the unique confluence of Lake Erie and the Niagara River. **(Exhibit E)**

34. Three of the Busti properties, located at 771, 777, and 793 Busti Avenue, have been designated as eligible for the **National Register of Historic Places** by the New York State Office of Parks, Recreation and Historic Preservation.

35. The property at 771 Busti Avenue, known as "the Wilkeson House," has been designated as a City Landmark by the City of Buffalo.

36. Upon information and belief, the Busti Avenue properties were acquired by the Respondent between 1995 and 1998.

37. The Respondent, has, since at least 1991, sought to plan and construct transportation and other plaza improvements on its property situate in Buffalo, New York.

38. As recently as 2001, the Respondent initiated an Environmental Impact Statement process pursuant to the National Environmental Quality Act (NEPA), 42 U.S.C. §§ 4321 *et seq.*, and SEQRA to plan and construct a new international bridge span across the Niagara River to Canada, as well as an expansion of the bridge plaza in the United States. The project was officially abandoned in January 10, 2012 after issuance of a Draft Environmental Impact Statement pursuant to SEQRA and the NEPA. **(Exhibit F)**

39.     Lake Erie and the Niagara River are designated Coastal Waterways in New York State, The seven Busti Avenue houses are located within the NYS Coastal Area shown on the Coastal Area Map as designated by NYS, as shown on (**Exhibit G**).

40.     The "Busti Avenue Structures" and Prospect Hill Neighborhood garner widespread and enthusiastic public recognition as exhibited by the existence of high visitation, historic sites, parks and tourism and is designated as a Preservation League of New York State "Seven to Save" area, and the National Trust for Historic Preservation "Eleven Most Endangered Historic Places" list.

41.     The "Busti Avenue Structures" demolition and expansion activities are substantially contiguous to Front Park, a historic park designed by Frederick Law Olmsted, listed on the National Register of Historic places.

42.     The Peace Bridge, originally constructed and operated by the Buffalo and Fort Erie Public Bridge Company, opened for public use in 1927.

43.     When the Peace Bridge was first built it intruded only slightly into the "Neighborhood." The U.S. Plaza used only four acres of what had been Fort Porter and traffic across the bridge was, by current standards, light.

44.     Over time traffic across the Peace Bridge grew to a current level of more than 6,000 trucks and 27,000 cars per day.

45.     Those figures translate into more than 7 million cars per year and roughly 1.4 million trucks per year.

46.     Today, the Peace Bridge serves as a conduit between the Queen Elizabeth Way ("QEW") in Canada and Interstate 190, which is part of the interstate system in the United States.

47. The U.S. Plaza also grew in order to accommodate increased traffic. The U.S. Plaza now consumes all of the Fort Porter site and much of Front Park. In addition, access roads run the length of Front Park, effectively dominating the Front Park.

48. The "Public Bridge Authority" adopted a resolution by the Board of Directors on May 25, 2012 ("Resolution") authorizing demolition and that it will comply "on a voluntary basis" with applicable provisions of the City of Buffalo's demolition ordinance "to minimize potential health and safety impacts from demolition activities."

49. On June 5, 2012 the Peace Bridge Authority prepared an Environmental Assessment Form, (hereinafter "EAF"), classifying the demolition of the seven Busti Avenue houses as an "Unlisted" action pursuant to New York State Department of Environmental Conservation SEQRA regulations, 6 NYCRR §617.2(ak) and issued a negative declaration. No publication for public comments was made of the Negative Declaration by the Respondent as required by 6 NYCRR §617.12 (a)(2)(i). (**Exhibit H**)

50. Upon information and belief, the Respondent has not prepared regulations to comply with the New York State Environmental Quality Review Act, as required by 6 NYCRR §617.1 (b) and 617.14.

51. The Public Bridge Authority has not prepared a coastal assessment form (CAF) as required by 6 NYCRR §617.9 in conjunction with its June 5, 2012 Environmental Assessment Form. As the Busti Avenue houses are in a mapped coastal zone, no SEQRA determination can be made until the Coastal Assessment Form is completed.

52. The EAF prepared by the Respondent fails to mention the true purpose of the proposed demolitions. Upon information and belief, the Respondent has a present

purpose and plan to engage in an expansion of the Peace Bridge Plaza in Buffalo, New York, including the addition of more inspection stations, parking spaces and a new duty-fee store.

53.     On April 4, 2012, the Respondent's General Manager, Ronald Reinas, declared it was the intention of the PUBLIC BRIDGE AUTHORITY to demolish the Busti Avenue houses in order to make way for an expansion of the Bridge plaza.   The plan would also include the acquisition of the Episcopal Church Nursing Home located at 24 Rhode Island Avenue, Buffalo, New York.  **(See, Ex. D)**

54.     On May 30, 2012, at a meeting to discuss the Existing U.S. Plaza and future expansion activities a Map was distributed by the Respondent, identifying land owned by the Public Bridge Authority and land owned by the Episcopal Church Home that identified land needed to complete plaza project, roads owned by the City, and the last remaining home to be purchased by the "Public Bridge Authority" as shown on **(Exhibit I)**.

55.     Upon information and belief, the Respondent is presently in the process of acquiring an additional home, 775 Busti Avenue, for demolition along with the seven previously mentioned properties.

## IV.     AS AND FOR A FIRST CAUSE OF ACTION: VIOLATION OF THE NEW YORK STATE ENVIRONMENTAL QUALITY REVIEW ACT

56.     The allegations contained in paragraph "1" through "55" inclusive are hereby realleged as more fully set forth herein.

57.     As previously indicated, the Public Bridge Authority, voluntarily designated itself as "lead agency" to make SEQRA determinations. As lead agency it is

their responsibility to assure that all laws and regulations pursuant to SEQRA are carried

out.

58.    The regulations promulgated by the New York Department of

Environmental Conservation pursuant to SEQRA state,

> "6 NYCRR § 617.1(c)   The basic purpose of SEQRA is to incorporate the consideration of environmental factors into the existing planning, review and decision-making processed of state, regional and local government agencies at the earliest time possible. To accomplish this goal. SEQRA requires that all agencies determine whether the actions they directly undertake, fund or approve may have a significant impact on the environment and, if it is determined that the action may have a significant adverse impact, prepare or request an environmental impact statement."

59.    According to the regulations promulgated pursuant to SEQRA the lead

agency shall,

> "make a preliminary classification of an action as Type I or Unlisted, using the information available and comparing it with the thresholds set forth in section 617.4 of this Part. Such preliminary classification will assist in determining whether a full EAF and coordinated review is necessary." 6 NYCRR § 617.6

60.    The SEQRA regulations require that a lead agency determine whether or

not a proposed project is a "Type I" action or an "Unlisted" action. As indicated in the

regulations:

> "The purpose of the list of Type I actions in this section is to identify, for agencies, project sponsors and the public, those actions and projects that are more likely to require the preparation of an EIS than Unlisted actions. All agencies are subject to this Type I list. (1) This Type I list is not exhaustive of those actions that an agency determines may have a significant adverse impact on the environment and require the preparation of an EIS. However, the fact that an action or project has been listed as a Type I action carries with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS..." 6 NYCRR § 617.4

61.     Furthermore, SEQRA regulations require that an action be classified as Type I where,

> "(9) any Unlisted action (unless the action is designed for the preservation of the facility or site) occurring wholly or partially within, or substantially contiguous to, **any historic building, structure, facility, site or district** or prehistoric site that is listed on the National Register of Historic Places, or that has been proposed by the New York State Board on Historic Preservation for a recommendation to the State Historic Preservation Officer for nomination for inclusion in the National Register, or that is listed on the State Register of Historic Places (The National Register of Historic Places is established by 36 Code of Federal Regulation (CFR) Parts 60 and 63, 1994 (see section 617.17 of this Part)); 6 NYCRR § 617.4

62.     As previously indicated, the "Busti Avenue Structures" are "substantially contiguous" to the historic Frederick Law Olmsted, Front Park, which is listed on the National Register of Historic Places and the State Register of Historic Places. Accordingly, the Public Bridge Authority failed to classify the "project" as a Type I action and erred when it designated the project as an "Unlisted" action.

63.     The EAF provides no reason for segmentation of the demolition phase from plaza expansion activities that on information and belief include acquisition and demolition of two contiguous sites including Patrick Sole Park and the Episcopal Church Home, and fails to take a "hard look" associated with the project.

64.     The EAF fails to address important environmental concerns such as Neighborhood character and offers conclusory statements that the project will "improve the appearance of the surrounding neighborhood" which do not meet the requisite "hard look" standard of review.

65.     The demolition of buildings and properties that are listed as Local Landmarks in the City of Buffalo would constitute actions that significantly and

adversely affect the quality of the environment, and as such, would require the drafting of an environmental impact statement pursuant to SEQRA.

66.     Therefore, because the PUBLIC BRIDGE AUTHORITY has not completed its responsibility pursuant to SEQRA, an injunction should be issued enjoining the Public Bridge Authority from demolishing any of the properties at issue until such time as they have fully complied with SEQRA.

## V. FOR A SECOND CAUSE OF ACTION: VIOLATION OF THE NEW YORK STATE COASTAL MANAGEMENT PLAN

67.     The allegations contained in paragraph "1" through "66" inclusive are hereby realleged as more fully set forth herein.

68.     On information and belief, the "Busti Avenue Structures", sited within the NYS Coastal Area Map region as designated in 19 NYCRR § 600.2.

69.     This community has a rich historic heritage preserved in a variety of well-maintained historic districts, sites, structures and spaces. There is widespread historic integrity as evidenced by nearby historic districts. It is characterized by a strong sense of historic character and continuity expressed in architecture and the landscape contains a local landmark that marks location of major historic events.

70.     The demolition of the "Busti Avenue Structures" and subsequent redevelopment affects cultural and historic properties land use in a manner that materially changes the use and appearance of land and structures located within the designated coastal zone.

71.     As a locally significant coastal area, the demolition of the Busti Avenue houses, without compliance with NYS coastal policies contained in §§ 600.5 and 600.4, is a further violation of N.Y. Exec. Law § 42, N.Y. Exec. Law § 911, and 16 U.S.C.A. § 1453

72.     A Coastal Assessment Form (CAF) must be completed prior to the agency's determination of significance pursuant to SEQRA. 6 NYCRR Part 617.11(f)

73.     Therefore, the Peace Bridge Authority should be enjoined from demolishing the Busti Avenue houses until 19 NYCRR § 600.2, § 600.5, N.Y. Exec. Law § 42, N.Y. Exec. Law § 911, and 16 U.S.C.A. § 1453 have been fully complied with.

## VII.     **FOR A THIRD CAUSE OF ACTION:**<br>**VIOLATION OF THE PUBLIC TRUST DOCTRINE**

74.     The allegations contained in paragraph "1" through "73" inclusive are hereby realleged as more fully set forth herein.

75.     On information and belief, the Patrick Sole Park, located at 888 Columbus Parkway, in the City of Buffalo, State of New York is a Park dedicated as such by the City of Buffalo.

76.     Patrick Sole Park is regularly used by the neighborhood community as a passive park, and as such, is locally significant.

77.     As dedicated parkland, Patrick Sole Park is held in Trust for the benefit of the Public.

78.     The taking of and use of Patrick Sole Park without the specific approval of the New York State legislature is a violation of the New York State Public Trust doctrine.

79.     Therefore, The PBA should be enjoined from either taking or using Patrick Sole Park until The Public Trust Doctrine has been fully complied with.

## VIII.     **FOR A FOURTH CAUSE OF ACTION:**<br>**VIOLATION OF THE BUFFALO CITY CODE**

80.     The allegations contained in paragraph "1" through "79" inclusive are hereby realleged as more fully set forth herein.

81.     Pursuant to the New York State Executive Law, Section 381, the Secretary of State is required to publish regulations to insure the enforcement of the New York

Uniform Fire Prevention and Building Code, that must be administered by local governments.

82.    Pursuant to published regulations of the Secretary of State, all state agencies must comply with the State Uniform Fire Prevention and Building Code, and seek permits from the local permitting agency.

Said regulation states:

> "19 NYCRR §1204.7. Construction permits.
> (a) On or after July 1, 1990, no State agency shall commence the erection, construction, enlargement, alteration, improvement, relocation, removal, or **demolition** of any building or structure without first obtaining a construction permit from a construction-permitting agency. "

Pursuant to §1203.3(h) a "State Agency" is defined as:

> "(1) A department, bureau, commission, board, public authority or other agency of the State of New York including a public benefit corporation whose board of directors includes any member appointed by the Governor."

83.    The City of Buffalo is the responsible agency for administering the New York State Uniform Fire Prevention and Building Code for buildings within the City of Buffalo.

84.    Upon information and belief, the Respondent has not obtained a demolition permit from the agency designated by the Secretary of State, to wit, the City of Buffalo, and is proceeding illegally with the demolition of the Busti Avenue properties.  Buffalo City Code, §103-2.1

85.    Pursuant to the Code of the City of Buffalo, all properties for which a demolition permit is sought must be reviewed by the Preservation Board of the City of Buffalo. Buffalo City Code, §337-18

86.     One of the purposes of the Buffalo City Code's Preservation Code is to avoid demolition of historically or architecturally important properties. § 337-1.

87.     The Preservation Board, upon investigation, as it deems necessary, makes a determination as to whether a proposed landmark, landmark site or historic district meets the established criteria. § 337-15

88.     Specifically, Section 337-16(A) requires that prior to a demolition of a landmark structure or any part of a landmark site that affects the exterior of such property (1) a certificate of appropriateness or a certificate of no effect or a certificate of exception authorizing must be obtained and (2) a building permit is required. § 337-16 (A)

89.     Section 337-16 (C) states that even where a building permit is not required, an "application for permission to construct, alter, remove or demolish landmarks, improvements on landmark sites or structures within historic districts shall be made directly to the Preservation Board."

90.     All certificates must be properly displayed at the site. § 337-17

91.     Section § 337-27 (B) requires owners and their agents of a landmark and landmark sites "keep in good repair all portions of such improvements which, if not so maintained, may cause the exterior portions of such improvements to deteriorate, decay or become damaged or otherwise fall into a state of disrepair."

92.     On information and belief, no governmental enforcement agency ordered the demolition of any improvement on a landmark to remedy emergency conditions, determined to be imminently dangerous to life, health or property.

93.     On information and belief, the Preservation Board did not receive notice of an official order of dangerous conditions at the landmark site. Also, on information and belief, the Preservation Board did not receive any written notice of any proposed

order or direction, which affects or may affect the exterior appearance of a landmark or landmark site.

94.     Therefore, by not complying with the City of Buffalo procedures for demolition of properties within the City of Buffalo, nor notifying the Preservation Board of the demolition of a local landmark property, Respondents have violated the City of Buffalo Charter §§ 337, 103.

**WHEREFORE**, Petitioners respectfully pray that the Court grant the following relief to the Petitioner:

a.     Void the resolution of the Public Bridge Authority Board of Directors approving the demolition;

b.     Declaratory Relief and Judgment declaring that the Respondent's action to demolish the Busti Avenue Properties is a Type 1 action under the Regulations of the New York State Department of Environmental Conservation, 6 NYCRR §617.4(b)(9) & (10).

c.     Declaratory Relief and Judgment declaring the that the Respondent, PUBLIC BRIDGE AUTHORITY, must comply with the New York State Environmental Conservation Law, Article 8, and the Regulations thereunder, and prepare an Environmental Impact Statement, describing the alternatives to the proposed action and measures the Respondent will take to mitigate environmental harm.

d.     Issue a Permanent Injunction enjoining the Respondent from taking any further action or expending any further funds for the demolition of the Busti Avenue houses, to wit, 757, 765, 771, 775, 783, 791 & 793 Busti Avenue in the City of Buffalo, New York, and affirmatively requiring the Respondent to restore all items removed from said properties since June 12, 2012, until such time as the laws of the State of New York and the Public Trust Doctrine have been fully complied with.

Dated:     Buffalo, New York
           June 18, 2012

Yours etc.,


RICHARD J. LIPPES, ESQ.              RICHARD G. BERGER, ESQ.
Attorney for Petitioner              Attorney for Petitioner
1109 Delaware Avenue                 403 Main Street, Suite 705
Buffalo, New York 14209              Buffalo, New York  14203
Telephone: (716) 884-4800            Telephone: (716) 852-8188
Fax:  (716) 884-6117                 Fax:  (716) 852-7550
email: rlippes@concentric.net        email:  rgberger@rgbergerlaw.com

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

In the matter of the Application of
THE CAMPAIGN FOR BUFFALO HISTORY,
ARCHITECTURE & CULTURE, INC.,

Petitioner,

For a Judgment pursuant to Article 78 of the
Civil Practice Laws and Rules

**VERIFICATION**

against

Index No. _____

BUFFALO AND FORT ERIE
PUBLIC BRIDGE AUTHORITY,

Respondent.

STATE OF NEW YORK      )
COUNTY OF ERIE        )ss:

TIMOTHY TIELMAN, Executive Director of The Campaign for Buffalo History, Architecture & Culture, Inc., deposes and says:

1.     I am the Petitioner in the within action.

2.     I have read the foregoing Notice of Petition and Petition and know the contents thereof; the contents of the Notice of Petition and Petition are true to my knowledge except as to those matters therein stated to be alleged upon information and belief and as to those matters, I believe them to be true.

TIMOTHY TIELMAN,
Executive Director

Sworn to before me this
18th day of June, 2012.

Notary Public



RICHARD G. BERGER
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES FEB. 28, 2014

SUPREME COURT                              COUNTY OF ERIE

---

In the matter of the Application of
THE CAMPAIGN FOR BUFFALO HISTORY,
ARCHITECTURE & CULTURE, INC.,
                    Petitioner,                    **AFFIRMATION**

                                                   INDEX NO.

vs.

BUFFALO AND FORT ERIE
PUBLIC BRIDGE AUTHORITY,
                    Respondent.

For review, pursuant to Article 78 of the CPLR, of a
Decision not to prepare an Environmental Impact
Statement, pursuant to the New York State
Environmental Quality Review Act, ECL Article 8

---

    RICHARD G. BERGER, ESQ., affirms under penalty of perjury that he is an attorney

licensed to practice law before the Courts of the State of New York, that he is one of the

attorneys for the Petitioner, THE CAMPAIGN FOR BUFFALO HISTORY, ARCHITECTURE

& CULTURE, INC., that he is fully familiar with the facts and pleadings in the instant matter,

and that he makes this affirmation in support of Petitioner's Motion for a Preliminary Injunction.

    1.  Petitioner brings this Petition by Order to Show Cause, pursuant to Article 78 of the

CPLR, seeking review of a decision by Respondent, BUFFALO AND FORT ERIE PUBLIC

BRIDGE AUTHORITY, which decision determined that an Environmental Impact Statement

pursuant to the New York State Environmental Quality Review Act, ECL Article 8, was not

required for demolition of seven (7) houses on Busti Avenue in Buffalo, New York ("the

Project").

2.   Pursuant to the New York State Environmental Quality Review Act, ECL Article 8, and the regulations implementing the Act, specifically, 6 N.Y.C.R.R. §617.12, Respondent, prepared a negative declaration on June 4, 2012 stating that the proposed project "will not have a significant adverse environmental impact." (Petition, **Exhibit H**)

3.   The Petitioner herein seeks injunctive relief, both temporary and permanent, enjoining the Respondent from taking any further action or expending any further funds towards the demolition of properties situate at 57, 765, 771, 783, 791 & 793 Busti Avenue in the City of Buffalo, New York, the project in question, until the Respondent has complied with the SEQRA and prepared a full Environmental Impact Statement.

4.   The respondent, Public Bridge Authority, proposes to demolish seven houses on Busti Avenue, all on one block. See, **Exhibit B**.

5.   A temporary restraining order and preliminary injunction is necessary because the Respondents are proceeding with demolition of the buildings. As shown in the attached photos, (**Exhibit J**) excavation in preparation of demolition at the site has started, and, upon information and belief, the Respondent has hired an outside firm to strip the houses of the important and valuable interior woodwork and furnishings. Petitioner believes that the Respondent is preparing to commence demolition of the buildings on or before June 26, 2012. Such further activities would prejudice the Petitioner's case by removing the structures that are in controversy in this case. The Petitioner requests that the status quo be preserved pending final determination by this Court.

6.   There is no present need to demolish any of the Busti Avenue houses, as the Respondent has not published or announced plans to use the properties.   As   stated   in   the

Affidavit of Paul McDonnell, Jr., the houses are in reasonably good condition and present no danger to the public.

7.     The Public Bridge Authority "voluntarily" prepared an Environmental Assessment Form, in compliance with DEC regulation 6NYCRR §617.7. **Exhibit H**.  In doing so, the Board of the PBA, in its Resolution, declared that since the it had abandoned previous plans to construct a companion bridge to the existing Peace Bridge, and canceled the Environmental Impact Statement process, it was now free to demolish the Busti Avenue houses, that it previously could not demolish, since environmental studies were incomplete. *id.* (See also, **Ex. F**, wherein the Respondent officially cancelled the Environmental Impact  Statement process.)

8.     In the EAF, the Respondent declared that the destruction of the Busti Avenue houses was not a Type 1 action pursuant to DEC regulation 6 NYCRR §617.7, but was an inconsequential, unlisted action that would have little or no adverse impact upon the human environment.  Respondent asserted that the demolition project of these seven houses in a historic neighborhood, where three of the houses are eligible for the National Register, was an "unlisted" action that did not require an Environmental Impact Statement or public scrutiny, pursuant to SEQRA. The Petitioner strongly disagrees.

9.     Petitioner asserts that the action of demolition itself is a major action of a New York State governmental body, that is a Type 1 action pursuant to DEC regulations, and that the Respondent is required to prepare an Environmental Impact Statement.

10.     Further, Petitioner is aware that the PUBLIC BRIDGE AUTHORITY has misrepresented its intentions in the Environmental Assessment Form it prepared.   The Respondent declared in the EAF that the site was not located near any critical environmental

areas. (Ex. F, Part 1, No. 19) Yet, it is quite obvious that the site is located near to Front Park, the Black Rock Canal, Columbus Park, The Bank (originally designed by Frederick Law Olmsted and Calvert Vaux) and the junction between Lake Erie and the Niagara River, all extremely sensitive and prominent historical and environmental assets. Moreover, the EAF declares that the sole purpose of the project to be as follows:

> "The Project will remove the blighting influence of mostly long-vacant and boarded up houses *and complete the conversion of the entire block to open green space for additional buffering between the neighborhood and the Plaza.*" **Ex. H, Resolution, p. 4.** (emphasis added)

Both Petitioner and Respondent are well aware that the purpose of the demolitions is not to provide a buffer to the neighborhood, but to make way for the acquisition and demolition of other nearby properties, including the historic Episcopal Church Home, in order to expand the New York Peace Bridge Plaza and build a new duty-free store. So much has been publicly revealed by the Respondent and Governor Andrew Cuomo.

11. On April 4, 2012, the Governor, in Buffalo, New York, declared that he properties on Busti Avenue must come down to make way for the expansion of the Peace Bridge Plaza. **Exhibit K** On May 30, 2012, a map was distributed by the New York Department of Transportation showing the probable new location of the expanded New York Peace Bridge facilities. **Exhibit I**. The map clearly shows the present Busti houses and the Episcopal Church Home being part of the new Plaza.

12. The attempt by the Respondent to demolish the Busti Avenue houses without acknowledging the real purpose of the project is an illegal attempt to segment the environmental review process, in violation of DEC SEQRA regulation 6 NYCRR §617.3(g)(1).

" Considering only a part or segment of an action is contrary to the intent of SEQR."

The only reason the Respondent has concealed the true purpose of the demolitions is to avoid having to full set forth the environmental consequences of its plans to vastly increase the size of the New York State Peace Bridge Plaza facilities in an Environmental Impact Statement with appropriate public input.

13.     Byron Brown, Mayor of Buffalo, has protested the attempt to demolish the Busti Avenue houses without considering larger Peace Bridge Plaza expansion project. **Exhibit L**

14.     An essential purpose of an Environmental Impact Statement is to consider alternatives to the proposed action that are less environmentally harmful. 6 NYCRR §617.9(5)(v). No alternatives have been considered by the Respondent.

15.     The demolition of historic houses eligible for the National Register of Historic Places, and in close proximity to other National Register sites is a Type 1 action under SEQRA that presumptively requires a full Environmental Impact Statement. 6 NYCRR §617.4(b)(9) & (10)

"(b) The following actions are Type I if they are to be directly undertaken, funded or approved by an agency:

(9) any Unlisted action (unless the action is designed for the preservation of the facility or site) occurring wholly or partially within, or substantially contiguous to, any historic building, structure, facility, site or district or prehistoric site that is **listed on the National Register of Historic Places, or that has been proposed by the New York State Board on Historic Preservation for a recommendation to the State Historic Preservation Officer for nomination for inclusion in the National Register,** or that is listed on the State Register of Historic Places (The National Register of Historic Places is established by 36 Code of Federal Regulation (CFR) Parts 60 and 63, 1994 (see section 617.17 of this Part));

(10) any Unlisted action, that exceeds 25 percent of any threshold in this section, occurring wholly or partially within or **substantially contiguous to any publicly owned or operated parkland, recreation area or designated open space,** including any site on the Register of National Natural Landmarks pursuant to 36 CFR Part 62, 1994 (see section 617.17 of this Part); "

16.     Petitioner also asserts that the Respondent has not obtained any permits for its proposed demolitions from the appropriate permitting agency, the City of Buffalo, and that it has

failed to prepare a Coastal Zone Assessment Form as required by SEQRA regulations, 6 NYCRR § 617.11(f) and 19 NYCRR Part 600.

17. Petitioner submits that as the proposed demolitions, and the proposed Plaza expansion project, would have adverse effects upon the parks in the area, Patrick Sole Park and Front Park, that the Respondent is bound by a Public Trust to protect the parks, to evaluate the effect its actions will have upon the parks and to develop methodologies to mitigate any adverse effects its actions would have upon the parks.

18. The Petitioner is entitled to a Restraining Order and a Preliminary injunction for several reason:

a. The balance of the equities favors the Petitioner. There is no danger to the public posed by the buildings in their present state, and the Respondent has no immediate need to have the properties removed. At such time in the future that the Respondent formulates its Plaza expansion plans, and alternatives are explored, it can again consider whether the properties are needed for other, overriding purposes.

b. The Petitioner would suffer irreparable injury during the pendency of this proceeding if the Court were not to issue a restraining order and preliminary injunction.

c. The Petitioner is likely to succeed on the merits. It is quite clear that DEC regulations describe any action that would destroy historic structures in a historic neighborhood, near other historic sites and parks, as a Type 1 action that requires an Environmental Impact Statement. It is further clear to all that the real purpose the PBA wants to demolish the houses is not to beautify the neighborhood or to buffer the neighborhood from the Plaza, but, in fact, to clear the area so that it can expand its Plaza further into the surrounding neighborhood.

19.     Petitioner prays for a declaration by the Court that the demolition of the Busti Avenue houses is a Type 1 action that requires a full, environmental impact statement, pursuant to SEQRA, New York State Environmental Conservation Law Article 8, that the proposed project is a violation on SEQRA in that it is an attempt to segment the larger project of the expansion of the Peace Bridge Plaza, in a attempt to avoid proper environmental review of said demolitions, and Petitioner further prays for injunctive relief prohibiting the demolition of the Busti Avenue houses without preparation of the appropriate Environmental Impact Statement. As the Respondent has commenced the interior stripping of the houses, the Petitioner prays for an Order requiring that all interior furnishings be returned to said properties and preserved, pending further Order of this Court.

WHEREFORE, your deponent respectfully requests that the Petitioner's requested relief be granted in the form of a Temporary Restraining Order, pending further determination by the Court.

Dated: June 18, 2012

_____
Richard G. Berger

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

THE CAMPAIGN FOR BUFFALO, HISTORY,
ARCHITECTURE & CULTURE, INC.,

**AFFIDAVIT**

Index No.

Petitioner,

vs.

BUFFALO AND FORT ERIE PUBLIC BRIDGE AUTHORITY (hereinafter, "The
Public Bridge Authority")

Respondents.

---

STATE OF NEW YORK    )
COUNTY OF ERIE       )ss

TIMOTHY TIELMAN, being duly sworn, deposes and says:

1.    I am the Executive Director of The Campaign for Buffalo, History, Architecture
& Culture, Inc. I also sit as a member of the Preservation Board for the City of Buffalo. I
am fully familiar with the issues and proceedings regarding this case.

2.    Petitioner, THE CAMPAIGN FOR BUFFALO HISTORY, ARCHITECTURE &
CULTURE, INC. (hereinafter referred to as "THE CAMPAIGN FOR BUFFALO"), is a
not-for-profit corporation organized under the Not-for-Profit-Corporation Law of the
State of New York, with it's principal place of business in the City of Buffalo, State of
New York. THE CAMPAIGN FOR BUFFALO is a membership organization dedicated
to the preservation of historic, architectural and cultural resources in the City of Buffalo,
County of Erie, and State of New York.

3.    It is part of the mission of THE CAMPAIGN FOR BUFFALO to (a) encourage,
assist and promote the conservation, protection and enhancement of the human setting of
Niagara and Erie Counties, including culturally significant buildings, structures,
neighborhoods, parks and view sheds, for the cultural, physical, spiritual and economic

benefit of the public; (b) to develop and disseminate concepts that promote neighborhood development that is sensitive to the existing historic, architectural and cultural setting; (c) to disseminate information and stimulate public interest in history, architecture and culture through exhibits, educational programs, and the promotion of training, research and techniques in those areas; and (d) to review laws affecting conservation, zoning and planning, to determine whether such laws are being enforced, and to persuade the proper officials to enforce such laws.

4.     The Campaign for Buffalo has participated in a broad range of activities associated with the preservation of historical buildings and resources in Buffalo and Erie County. It has published numerous articles it its newspaper, Greater Buffalo, and on its web log, Greater Buffalo Blog, on a variety of preservation issues.

5.     The Campaign for Buffalo is familiar with the laws and regulations governing the identification and designation of historic buildings, structures and districts, and has participated in numerous efforts to have such resources protected at the federal, state and/or local level through the preparation of applications for such designation, and by working with the appropriate authorities to secure the same.

6.     The Campaign for Buffalo has done extensive research on the history of Buffalo and has created and conducted architectural and historical tour programs, including bus and walking tours of the Prospect Hill neighborhood, including the structures on Busti Avenue between Vermont and Rhode Island streets and the Episcopal Church Home at 24 Rhode Island Street (a.k.a 825 Busti Ave.). The Prospect Hill neighborhood is designated as a Preservation League of New York State "Seven to Save" area, as well as one of the National Trust for Historic Preservation's "Eleven Most Endangered Historic Places." The Busti Avenue structures constitute a rich and evocative streetscape and are historically significant. This 19th-century streetscape includes the locally landmarked Colonel Wilkeson House at 771 Busti Avenue, a National Register-Eligible and State Register-Eligible property. The Episcopal Church home, including the Hutchinson Chapel and Thomas Thornton Memorial Building, and the associated landscape, has been designated a City of Buffalo landmark and designated National-Register Eligible.

7.    The Campaign for Buffalo has over three hundred (300) members who are keenly interested in the local history, architecture and culture, including many who live and work in proximity to the Prospect Hill Neighborhood. Since its inception in 2002, The Campaign for Buffalo has been working diligently for the preservation and restoration of the Prospect Hill Neighborhood, specifically calling for the reuse of the Colonel Wilkeson House.

8.    The interests of the Petitioner, The Campaign for Buffalo, and its members who live and work in the Prospect Hill neighborhood are within the zone of interests intended to be protected by the statutes upon which this action is based, namely, the New York State Environmental Quality Review Act (hereinafter referred to as "SEQRA"), Environmental Conservation Law § 8-103 et. seq., and the regulations promulgated thereunder.

9.    The Campaign for Buffalo is a responsible organization that is capable of competently pursuing this litigation on behalf of the public interested in historic preservation and community improvement. The Campaign for Buffalo has pursued several lawsuits on behalf of preservation interests, and is currently a Plaintiff in the action before the Western District of New York and the Second Circuit Court of Appeals regarding the Seneca Nation of Indians proposed gambling casino. Campaign is also an intervener in a case before the Buffalo City Court seeking to prevent the demolition of a historic structure located in the Cobblestone District of Buffalo.

10.    The City of Buffalo is actively planning for its future as a destination for historic tourism. The Buffalo Psychiatric Center, designed by the father of American architecture, H.H. Richardson, is currently undergoing renovation at a cost of almost 100 million dollars. The Darwin-Martin House designed by Frank Lloyd Wright has undergone a historic restoration and reconstruction at a cost of in excess of 50 million dollars. Through the efforts of preservationists, developers, the city of Buffalo, and Visit Buffalo Niagara, The National Trust for Historic Preservation held its 2011 annual conference in Buffalo.

11.    The City of Buffalo and The Campaign for Buffalo and its members would suffer a grievous architectural and historical loss if the proposed demolition of houses on Busti Avenue between Vermont and Rhode Island streets were allowed to proceed.

WHEREFORE, your deponent respectfully requests that the instant Petition be granted in all respects.



TIMOTHY TIELMAN

Sworn to before me this
_____ day of June, 2012.

Notary Public

RICHARD G. BERGER
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES FEB. 28, 2014

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

THE CAMPAIGN FOR BUFFALO HISTORY,
ARCHITECTURE & CULTURE, INC.,

              Petitioner,

vs.

BUFFALO AND FORT ERIE PUBLIC BRIDGE AUTHORITY,

              Respondent.

**AFFIDAVIT**

Index No.

---

STATE OF NEW YORK   )
COUNTY OF ERIE      ) SS:

PAUL MCDONNELL, JR., being duly sworn, deposes and says:

1.     I have been employed by the Buffalo Public Schools since 1995; as Director of Facilities, Planning, Design, and Construction since 2011 and as Associate Architect from 1995 to 2011. From 1989 to 1995 I served as a Senior Architect with the Buffalo Department of Public Works Architect's Office. From 1983 to 1988 I was an intern architect, then an architect, with Cannon Design of Grand Island, New York.

2.     I received a B.A. in Environmental Design cum Laude in 1982 from the University at Buffalo and a Master's Degree in Architecture in 1986 from the University at Buffalo.

3.     I am a licensed architect in the State of New York and am accredited by the National Council of Architectural Registration Boards (NCARB)

4.     I currently reside at 82 Allenhurst Road, Buffalo. I am a lifelong resident of Buffalo, having attended St. Rose of Lima elementary school and St. Joseph's Collegiate Institute.

5.     In my tenure as Senior Architect in the Buffalo Department of Public Works, I was involved with the design and renovation of numerous municipal buildings, including libraries, community centers, park buildings, fire stations, police stations, and Buffalo City Hall. Most of work under my purview was deemed to effect historic structures and landscapes and designed to conform to both The Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring, and Reconstructing Historic Buildings and The Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes. All such work is subject to review by the New York State Historic Preservation Office (SHPO) for compliance with the historic standards.

6.     For the past 12 years, my task has been to design, program, and manage renovations to dozens of schools, including those in a $1 billion comprehensive renovation project. As the average age of a Buffalo school is over 70 years old, most of the buildings have been determined to be eligible for inclusion on the National Register of Historic Places, thereby subject to compliance with The Secretary of The Interior's Standards and SHPO review.

This is the by far the largest historic preservation project in the history of Buffalo. I act as liaison between the design architects and SHPO. I review the designs as they pertain to Buffalo School standards and Secretary of the Interior Standards before they are sent for review and approval in Albany. To date on this project I have worked on 48 buildings, 41 of which have been completed, and seven of which are under construction.

7.     I am the Chair person of the City of Buffalo Preservation Board.

8.     I am President of The Campaign for Buffalo History, Architecture and Culture, Inc., and have been a member and served on its board since 2002.

9. I am familiar with all local, state, and federal laws and standards regarding historic properties.

10. I am familiar with the Peace Bridge Expansion Project Draft Environmental Impact Statement proposals to expand the Peace Bridge plaza onto Busti Avenue and areas east and north.

11. I am familiar with "Structural Condition Inspection and Site Analysis of: 757, 765, 771, 777, 783, 791, & 793 Busti Avenue, Buffalo, New York," prepared for the Buffalo and Fort Erie Public Bridge Authority.

12. I am familiar with 771 Busti Avenue, the Col. Wilkeson House, which has been declared eligible for both the New York State and National registers of historic places, and the residential and associated structures at 757, 765, 775, 777, 783, 791, and 793 Busti Ave. Nos. 777 and 793 have also been designated National Register Eligible.

13. For 10 years I have conducted and researched architectural and historic tours for The Campaign for Buffalo History, Architecture & Culture in the Prospect Hill neighborhood, the Olmsted Park & Parkway System, the works of Frank Lloyd Wright in Buffalo, and the Buffalo waterfront, all of which are proximate to the properties listed above.

14. The structures on Busti Avenue as a group (excepting 765 Busti, which was built in 1988) form part of what, according to Dr. Francis Kowsky, SUNY Distinguished Professor (retired), calls "one of the most historically and architecturally significant quarters of the city of Buffalo."

15. The National Trust for Historic Preservation designated the Prospect Hill neighborhood as one of its "Eleven Most Endangered Places" in the United States in 2008, saying "dozens of historic buildings would be adversely affected through the loss of context and visual

alterations" because of demolitions, the elimination of streets, and the permanent alteration of scenic lake views.

16. The Preservation League of New York State designated Prospect Hill as one of its "Seven to Save" in 2008

17. The contiguous properties of 771, 775, 777, and 783 Busti form an impressive and characteristic 19th-century street wall that is an important cultural landscape in the city.

16. The proposal to expand the Peace Bridge plaza by destroying all the houses on Busti Avenue between Vermont and Rhode Island streets would have serious and irreversible consequences. There has been no consideration of the site as part of a cultural landscape, or the effect of the destruction of the houses individually or as a group on remaining National-Register-Eligible properties directly adjacent.

18. The proposed demolition, and the proposed new construction of a building, roadways, and parking lots are inappropriate for the historic context in which they would be placed. The demolition would harm the landscape and architecture and the public appreciation of them.

19. As the demolition and construction would effect the locally-listed and National and State Register Eligible Wilkeson House, and two other National-and State Register Eligible properties, an in-depth review of the impacts any changes would have must be performed, and methods to mitigate possible harm must be investigated. This must include public input. The opportunity must be given for residents, historians, architects and various experts to express their concerns and share their opinion on a project located on what is one of Buffalo's most historically important and sensitive sites.

20. I have recently visited the site of 757, 765, 771, 775, 777, 783, 791, and 793 Busti Avenue and find no imminent danger to the public due to the structural condition of the build-

ings. With properly maintained fencing around the perimeter of the subject properties, any risk to the public is abated. Demolition for reasons of public hazard is unnecessary.

PAUL MCDONNELL, Jr.

Sworn to before me this
13th day of June, 2012.

Notary Public

RICHARD G. BERGER
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES FEB. 28, 2014

Exhibit A



Exhibit B

