UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE CAMPAIGN FOR BUFFALO HISTORY,
ARCHITECTURE & CULTURE, INC.,

        Petitioner,

        vs.                                   **Civil Action No: 12-CV-605S(M)**

BUFFALO AND FORT ERIE PUBLIC BRIDGE
AUTHORITY,

        Respondent.
_____

### RESPONDENT'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S CLAIMS

PHILLIPS LYTLE LLP
Kevin M. Hogan, Esq.
Adam S. Walters, Esq.
Attorneys for Respondent
Buffalo And Fort Erie Public
   Bridge Authority
3400 HSBC Center
Buffalo, NY 14203
Telephone No.: (716) 847-8400
khogan@phillipslytle.com
awalters@phillipslytle.com

Dated:     Buffalo, New York
               November 30, 2012

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

LEGAL DISCUSSION ..........................................................................................................2

    I.      PETITIONER FAILED TO ESTABLISH THAT IT HAS STANDING TO BRING A COASTAL ZONE CLAIM, A PUBLIC TRUST DOCTRINE CLAIM OR A CLAIM UNDER THE BUFFALO CITY CODE. ..........................2

          A.      Petitioner Will Not Suffer An Actual Injury In Fact With Regard To Its Public Trust Doctrine and Coastal Zone Claims.....................................3

          B.      Petitioner Will Not Suffer An Actual Injury In Fact With Regard To Its Claim Under The City Code. ................................................................6

    II.     IN EVALUATING PETITIONER'S CLAIMS, THE COURT SHOULD NOT CONSIDER THE RESULTS OF PETITIONER'S INSPECTION BECAUSE THAT INFORMATION IS OUTSIDE THE RECORD AND NOT RELEVANT ..............................................................................................................9

CONCLUSION.....................................................................................................................11

# TABLE OF AUTHORITIES

Page

**CASES**

Bennett v. Spear,
 520 U.S. 154 (1997)...................................................................................................3

City of Olmstead Falls v. Fed. Aviation Admin.,
 292 F.3d 261 (D.C. Cir. 2002)....................................................................................7

Etuk v. Slattery,
 936 F.2d 1433 (2d Cir. 1991).....................................................................................3

Gernatt Asphalt Products, Inc. v. Town of Sardinia,
 87 N.Y.2d 668 (1996) ................................................................................................5

In re Basha Kill Area Ass'n v. Planning Bd. of Town of Mamakating,
 46 A.D.3d 1309 (3d Dep't 2007), lv. denied, 10 N.Y.3d 712 (2008).........................7

In re Buerger v. Town of Grafton,
 235 A.D.2d 984, lv. denied, 89 N.Y.2d 816 (1997) ...................................................8

In re Gallahan v. Planning Bd. of City of Ithaca,
 307 A.D.2d 684, lv. denied, 1 N.Y.3d 501 (2003) .....................................................7

In re Heritage Coalition Inc. v. City of Ithaca Planning & Dev. Bd.,
 228 A.D.2d 862, lv. denied, 88 N.Y.2d 809 (1996) ...................................................7

In re Save Our Main Street Bldgs. v. Greene County Legislature,
 293 A.D.2d 907, lv. denied, 98 N.Y.2d 609 (2002) ...................................................7

In re Shelter Island Ass'n v. Zoning Bd. of Appeals of Town of Shelter Island,
 57 A.D.3d 907 (2d Dep't 2008), lv. dismissed and denied, 12 N.Y.3d 797 (2009) ...................7

Kroposki v. Reid,
 2008 U.S. App. Lexis 23170 (2d Cir. 2008)...............................................................7

Lee v. Board of Governors of Fed. Res. Sys.,
 118 F.3d 905 (2d Cir. 1997)............................................................................2, 3, 5, 6

Los Angeles v. Lyons,
 461 U.S. 95 (1983)......................................................................................................5

Nat'l Audubon Soc'y v. Hoffman,
 132 F3d 7 (2d Cir. 1997) ..........................................................................................10

New York State Ass'n of Nurse Anesthetists v. Novello,
 2 N.Y.3d 207 (2004) ..................................................................................................5

O'Shea v. Littleton,
   414 U. S. 488 (1974)............................................................................................................5

Rent Stabilization Ass'n of New York City v. Miller,
   15 A.D.3d 194 (1st Dep't 2005) .........................................................................................5

Sierra Club v. Morton,
   405 U.S. 727 (1972)..................................................................................................2, 3, 6

Sierra Club v. SCM Corp.,
   747 F.2d 99 (2d Cir. 1984)..................................................................................................7

Warth v. Seldin,
   422 U.S. 490 (1975)............................................................................................................3

**OTHER AUTHORITIES**

United States Constitution, Art. II, § 3 ........................................................................................3

United States Constitution, Art. III ..........................................................................................2, 5

**PRELIMINARY STATEMENT**

Respondent Buffalo and Fort Erie Public Bridge Authority (the "PBA") submits this Supplemental Memorandum of Law in opposition to the claims of Petitioner, The Campaign for Buffalo History, Architecture & Culture, Inc. (the "Campaign"), in its Verified Petition dated June 18, 2012 ("Petition"). Petitioner seeks to prevent the PBA from demolishing eight houses located on Busti Avenue ("Busti Avenue Houses") and replacing those structures with landscaped greenspace (the "Demolition Project"). Petitioner has pleaded four causes of action, arguing that the PBA's decision to demolish the Busti Avenue Houses violates the State Environmental Quality Review Act ("SEQR"), the New York Coastal Zone Management Plan and the Federal Coastal Zone Management Act ("Coastal Zone Claims"), the Public Trust Doctrine, and certain sections of the Buffalo City Code.

In its Memorandum of Law in Opposition to Petitioner's Claims dated September 7, 2012 ("Respondent's 9/7/12 Mem.") and its Reply Memorandum of Law in Opposition to Petitioner's Claims dated September 21, 2012 ("Respondent's 9/21/12 Mem."), the PBA thoroughly addressed each of Petitioner's causes of action and the reasons that the Petition should be dismissed in its entirety. During a preliminary hearing on October 5, 2012, the Court noted that Respondent's briefs argued that Petitioner did not have standing to bring the SEQR claim, but did not address the Petitioner's standing relative to the Coastal Zone claim, the Public Trust Doctrine claim, or the claim under the Buffalo City Code. This Supplemental Memorandum of Law addresses Petitioner's lack of standing to bring those additional claims.

This Supplemental Memorandum also addresses an issue that the Court deferred in its October 5, 2012 Order granting Petitioner the right to conduct an inspection of 771, 777 and 793 Busti Avenue: whether Petitioner could supplement the Administrative Record with the results of the inspection or otherwise use those results in this proceeding. The Court should not

consider the results of the inspection in evaluating Petitioner's claims because the Court is limited to considering only the record that was before the PBA, no ground exists to supplement that record, and the results of Petitioner's inspection are not relevant to its claims.

## LEGAL DISCUSSION

I. **PETITIONER FAILED TO ESTABLISH THAT IT HAS STANDING TO BRING A COASTAL ZONE CLAIM, A PUBLIC TRUST DOCTRINE CLAIM OR A CLAIM UNDER THE BUFFALO CITY CODE.**

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Sierra Club v. Morton, 405 U.S. 727, 731-32 (1972). Standing is not merely a pleading requirement, but an indispensable part of a plaintiff's case; elements of standing must be supported in the same manner as any other matter on which the plaintiff bears the burden of proof. Lujan, 504 U.S. at 561. At this stage of this proceeding, when the claims are being decided on the merits, Petitioner must establish, by a preponderance of evidence, that it has standing to bring its claims.

The irreducible constitutional minimum of Article III standing contains three often-cited elements that Petitioner bears the burden of establishing:

(1) it or one of its members has "suffered an 'injury in fact' – an invasion of a judicially cognizable interest that is concrete and particularized, and actual and imminent, but not conjectural or hypothetical;

(2) there is a causal link between the injury and the conduct complained of; and

(3) the injury likely will be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 167 (1997); Lujan, 504 U.S. at 560 (1992); Lee v. Bd. of Governors of Fed. Reserve Sys., 118 F.3d 905, 910 (2d Cir. 1997).

The rationale for requiring a unique injury in order to establish standing rests on the constitutional concept of separation of powers: vindicating a public interest is uniquely a function of the legislative and executive branches; to allow a plaintiff to sue for redress of a public harm would shift to the courts the executive's most important constitutional duty, to "take Care that the Laws be faithfully executed." Lujan, 504 U.S. at 576-77 (quoting United States Constitution, Art. II, § 3)

### A. Petitioner Will Not Suffer An Actual Injury In Fact With Regard To Its Public Trust Doctrine and Coastal Zone Claims.

As discussed above, the first element of the "irreducible constitutional minimum of standing" is that Petitioner must establish that it has suffered an "injury in fact" – an invasion of a legally-protected interest that is concrete and particularized, and actual and imminent, but not conjectured or hypothetical. Lujan 504 U.S. at 560. "By particularized, [the Supreme Court] mean[s] that the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1; see also Sierra Club, 405 U.S. at 734-35 (the injury in fact test requires more than injury to a cognizable interest; it requires that the party seeking review be himself among the injured). In contrast, a claim that presents an "abstract question of wide public significance," or which amounts to a "generalized grievance" as opposed to one that concerns an injury that is unique to the plaintiff, does not present the requisite Article III standing. Warth v. Seldin, 422 U.S. 490, 499-500 (1975); Etuk v. Slattery, 936 F.2d 1433, 1440 (2d Cir. 1991); Lee, 118 F.3d at 910. When the subject of the lawsuit is a government action, and the petitioner is not itself the object of that action, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." Lujan, 504 U.S. at 562.

In Petitioner's Reply Memorandum of Law filed September 28, 2012 ("Petitioner's 9/28/12 Mem."), Petitioner admits that the taking of Patrick Sole Park is not associated with the Demolition Project, but rather would be the result of future expansion of the PBA's U.S. Plaza ("Plaza"). See Petitioner's 9/28/12 Mem., at 2 ("the plaza expansion would . . . actually take Patrick Sole Park, requiring approval of the New York State legislature under the Public Trust Doctrine"). Similarly, Petitioner argues that even if the Busti Avenue Houses are not in the established coastal zone ("Coastal Zone"), the Plaza is in the Coastal Zone, and any expansion of the Plaza would trigger the application of the Coastal Zone management policies. Petitioner's 9/28/12 Mem., at 3 ("Even if the PBA is correct that the homes are not in the Coastal Zone, certainly the Plaza is").

These concessions by Petitioner establish that the demolition of the Busti Avenue Houses -- the only subject of this proceeding -- will not result in an actual or imminent taking of Patrick Sole Park, nor interfere with any interest Petitioner may have within the Coastal Zone. Because the demolition of the Busti Avenue Houses will not affect, in any manner, Patrick Sole Park or the Coastal Zone, Petitioner can not establish any injury in fact. Moreover, even if Petitioner were permitted to link the demolition of the Busti Avenue Houses to future plans to expand the Plaza (which Petitioner should not be permitted to do because such an expansion is not a component of the contested action by the PBA), such claims of injury by Petitioner would still be conjectural and speculative. Petitioner offers absolutely no evidentiary support for its contention that any Plaza Expansion will cause any injury to either Patrick Sole Park and the Coastal Zone. In fact, a future Plaza concept plan attached as Exhibit I to the Petition does not depict any Plaza expansion within the Coastal Zone nor does it identify any taking of Patrick Sole Park. See Petition, at Ex. I. Thus, Petitioner can not establish that either alleged injury will

occur as a result of the potential Plaza expansion.  Speculative or conjectural claims of harm such as these are insufficient to establish the injury in fact that is required for Article III standing.  See Los Angeles v. Lyons, 461 U.S. 95, 102-03 (1983); O'Shea v. Littleton, 414 U. S. 488, 496 (1974).[1]

Requirements for establishing standing under New York law are virtually the same as Article III standing.  The petitioner has the same burden of demonstrating an "'injury in fact,' meaning that plaintiff will actually be harmed by the challenged administrative action." N.Y. State Ass'n of Nurse Anesthetists v. Novello, 2 N.Y.3d 207, 211 (2004); Gernatt Asphalt Prods., Inc. v. Town of Sardinia, 87 N.Y.2d 668 (1996).  Standing cannot be established when a petitioner's claims of harm are speculative.  N.Y. State Ass'n of Nurse Anesthetists, 2 N.Y.3d at 213 (plaintiff lacks standing where its argument that its members will be harmed is founded on layers of speculation and it is "not at all obvious" that plaintiff's members will be harmed as claimed from the challenged action).  See also Rent Stabilization Ass'n of N.Y.C., Inc. v. Miller, 15 A.D.3d 194 (1st Dep't 2005) (claims that law would reduce available affordable housing and increase lead paint poisoning were speculative and insufficient to establish standing).

Thus, Petitioner can not establish that the demolition of the Busti Avenue Houses will cause Petitioner to suffer an actual injury in fact relative to its Public Trust and Coastal Zone Claims.  As such, Petitioner lacks standing to bring its Public Trust and Coastal Zone Claims.

---

[1] For these same reasons, Petitioner cannot establish the second and third elements of Article III standing: that there is a causal link between the alleged injury and the conduct complained of; and that the alleged injury likely will be redressed by a favorable decision.  See Lujan, 504 U.S. 560-61.  There is a lack of a causal relationship between the action challenged (the demolition of the Busti Avenue Houses) and the harm complained of (taking of Patrick Sole Park or impacts to the Coastal Zone).  Moreover, the relief sought by Petitioner in this proceeding (delaying the demolition of the Busti Avenue Houses) would not redress the alleged injury (taking of Patrick Sole Park or impacts to the Coastal Zone).

### B. Petitioner Will Not Suffer An Actual Injury In Fact With Regard To Its Claim Under The City Code.

Petitioner claims that the PBA did not comply with certain City Code requirements in its efforts to demolish the Busti Avenue Houses and, in particular, failed to notify the Preservation Board of the demolition of a local landmark. See, e.g., Petition, at ¶ 94.[2] Petitioner's allegations of harm with regard to these alleged violations are identical to their claims of harm pursuant to SEQR (alleged harm to Petitioner's and its members' interest in and dedication to historic properties). See Petition, at ¶¶ 11-12; see also Petitioner's Memorandum of Law, dated September 7, 2012, at 1-7.

For the same reasons that Petitioner lacks standing under SEQR for these alleged harms, it lacks standing to pursue demolition-related claims under the City Code. See Respondent's 9/21/12 Mem., at 1-10. Petitioner can not establish an actual injury in fact from the demolition of the Busti Avenue Houses because, first, Petitioner's generalized appreciation, dedication, and/or efforts to preserve and protect historic, architectural and cultural assets in Buffalo[3] are not sufficient to establish standing under either State or Federal law. See Sierra Club v. Morton, 405 U.S. at 739 ("mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization . . . is not sufficient" to establish standing; Sierra Club's interest in the natural resources of the Mineral King Valley was not enough) (internal quotation marks omitted); Lujan, 504 U.S. at 565-66 (rejecting claim of standing based

---

[2] The Certified Record of Proceedings in this matter shows, contrary to Petitioner's claim, that the Preservation Board was, in fact, notified by the PBA of its intent to demolish the Busti Avenue Houses. R. at 93.

[3] Petitioner has participated in a broad range of activities associated with the preservation of historical buildings and resources in Buffalo and Erie County (Petition, at ¶ 5) and "seeks to preserve and protect historic, architectural and cultural assets in Buffalo and Western New York." Petitioner Supporting Affidavit of Elizabeth Martina filed on September 7, 2012 ("Martina Aff."), at ¶ 5; Petitioner Supporting Affidavit of Peter Certo filed on September 7, 2012 ("Certo Aff.") at ¶ 6.

on "an interest in studying or seeing the endangered animals" or based on "a professional interest in such animals"); Sierra Club v. SCM Corp., 747 F.2d 99, 103 (2d Cir. 1984) (holding that "a general interest in environmental preservation . . . does not constitute injury in fact"). See also In re Heritage Coalition Inc. v. City of Ithaca Planning & Dev. Bd., 228 A.D.2d 862, 864 (3d Dep't 1996); In re Save Our Main St. Bldgs. v. Greene Cnty. Legislature, 293 A.D.2d 907, 908-09 (3d Dep't 2002).

Second, while two of Petitioner's members live on property adjacent to the Busti Avenue Houses, Petitioner fails to offer anything other than conclusory allegations that these members will suffer special or unique harm, separate and apart from injuries of general concern to all residents of the area. See Petition, ¶¶ 11 and 12; Martina Aff.; Certo Aff. Proximity, in and of itself, however, is insufficient to establish standing. See City of Olmsted Falls v. Fed. Aviation Admin., 292 F.3d 261, 267 (D.C. Cir. 2002) ("geographic proximity does not, in and of itself, confer standing on any entity under NEPA or any other statute"); Kroposki v. Reid, No. 07-1496-AG, 2008 U.S. App. LEXIS 23170 (2d Cir. Oct. 31, 2008), at *2-3 (rejecting claim that plaintiffs had standing "due to the physical proximity of their homes"). See also In re Basha Kill Area Ass'n v. Planning Bd. of Town of Mamakating, 46 A.D.3d 1309, 1311 (3d Dep't 2007) (even immediate neighboring property owners cannot rely on physical proximity alone and must show that the close proximity exposes him or her to a harm different from the harm experienced by the public generally); In re Shelter Island Ass'n v. Zoning Bd. of Appeals of Town of Shelter Island, 57 A.D.3d 907, 909 (2d Dep't 2008) (despite proximity of 250 feet, allegations of harm constituted "generalized" injuries not "different from that suffered by the public at large"); In re Gallahan v. Planning Bd. of City of Ithaca, 307 A.D.2d 684, 685 (3d Dep't 2003) (standing not established, notwithstanding proximity of 700 feet, because allegations of harm related to

"indirect effects upon 'traffic patterns, noise levels, air quality and aesthetics throughout a wide area,' which generally are insufficient to establish standing"; view of abandoned landfill not the type of "scenic view" relevant to standing); In re Buerger v. Town of Grafton, 235 A.D.2d 984, 985 (3d Dep't 1997) (standing not established when the petitioner's alleged injuries, though serious, were "not specific to petitioner but [were] general concerns shared by all the residents of the area").

Third, Petitioner fails to offer <u>any</u> probative evidence of harm from the demolition of the Busti Avenue Houses. For instance, Petitioner's members Martina and Certo both allege that they can see the Wilkeson House. Martina Aff., at ¶ 3; Certo Aff., at ¶ 3. However, the fact that two of Petitioner's members can see one of the houses to be demolished from their residences is not an offer of proof of particularized harm from the Demolition Project. In fact, rather than sustaining any actual and imminent injury, Petitioner, its members, and the community at large will enjoy a net benefit from the demolition of the Busti Avenue Houses. See Respondent's 9/7/12 Mem., at 10-12. Moreover, a careful review of the Petitioner's papers in this matter shows that the real harm that they allege is from the potential expansion of the Plaza. See Respondent's 9/21/12 Mem., at 9-10. Indeed, both Certo and Martina clearly state that they have, for many years, been active in opposing attempts by the PBA to expand the Plaza. Martina Aff., at ¶ 4; Certo Aff., at ¶ 5. The current proceeding to challenge the demolition of the Busti Avenue Houses is, instead, based on Petitioner's view that demolition of these structures is one step towards Plaza expansion. See Berger Aff., at ¶ 22-25.

In summary, Petitioner fails to meet its burden to submit probative evidence that it or any of its members will suffer unique "injury in fact" from Respondent's alleged failure to

comply with the City Code as it relates to the demolition of the Busti Avenue Houses.  As a result, Petitioner lacks standing to maintain this cause of action.

## II. IN EVALUATING PETITIONER'S CLAIMS, THE COURT SHOULD NOT CONSIDER THE RESULTS OF PETITIONER'S INSPECTION BECAUSE THAT INFORMATION IS OUTSIDE THE RECORD AND NOT RELEVANT

Pursuant to the Court's October 5, 2012 Order, Petitioner was granted the right to inspect 771, 777 and 793 Busti Avenue. In its Order, the Court noted that determination of whether the results of the inspection may be used in this proceeding or to supplement the Certified Record on Proceedings ("Record") would be deferred and that the parties may submit a supplemental brief on this issue.  Affidavit of Adam S. Walters ("Walters Aff."), sworn to on November 30, 2012, ¶ 5.  The inspection was conducted on November 7, 2012.  Walters Aff., ¶ 7.  The only results of the inspection are 151 unlabeled photographs ("Photographs") that do not identify what is depicted.  Walters Aff., ¶ 9-10, and Exhibits A and B.  No report from the inspection was produced.  Walters Aff., ¶ 10.  The Court should not consider the results of the inspection in evaluating Petitioner's claims because the Court is limited to consideration of the Record and the information is simply not relevant.

As discussed in Respondent's Memorandum of Law in Opposition to Petitioner's Motion to Compel dated August 13, 2012 ("Respondent's 8/13/12 Mem.") (and set forth in more detail therein), this is an Article 78 Proceeding.  By Petitioner's own acknowledgement, the consideration of extra-record evidence is allowed "only when the administrative record is so inadequate as to prevent the reviewing Court from effectively determining whether the agency" complied with the laws that it is alleged to have violated.  See Petitioner's Memorandum of Law in Support of Petitioner's Motion for an Inspection, dated July 27, 2012, at 3, citing Nat'l Audubon Soc'y v. Hoffman, 132 F3d 7, 15 (2d Cir. 1997).

Such is not the case here. The Record includes a 41-page Structural Inspection Report prepared by a qualified professional engineer concerning the Busti Avenue Houses' structural integrity; a 1994 appraisal, a 1996 Architectural Integrity Summary, and the 1997 Reuse Report for the home at 771 Busti Avenue; and the HABS/HAER Report and the PBA's 2012 consultation with SHPO concerning all three historic houses at 771, 777, and 793 Busti Avenue. R. at 2-43; 108-18; 166-70; 171-99; 215; 244-48; 249-413; 415; 992. Petitioner has ignored that the Record already contains this voluminous information concerning the condition of these three houses, but the Court should not. The presence of this information already in the Record precludes Petitioner's attempt to supplement that Record. Indeed, not only do the Photographs fail to fill a hole in the Record, but, in fact, as can be readily seen from the Photographs, they are very consistent with the information already in the Record regarding the generally deteriorated and blighted condition of the Busti Avenue Houses. See Walters Aff., ¶ 11 and Exhibits A and B. In particular, the Photographs are substantially similar to (and remarkably repetitive of) the 189 Photographs contained in the archival reports prepared earlier this year for 771, 777 and 793 Busti. See R. at 287-313; 342-352; 389-413.

Respondent's 8/13/12 Mem. also sets forth in detail why the Photographs are simply not relevant to Petitioner's claims. As discussed in that memorandum (and set forth in more detail therein), all of Petitioner's causes of action in this proceeding contest whether the PBA complied with procedures set forth in certain laws or legal doctrines (SEQR, the Coastal Zone Management Plan, the Public Trust Doctrine and the Buffalo City Code) prior to undertaking the demolition of the Busti Avenue Houses. The applicability of these laws and doctrines to the Demolition Project and/or the PBA's compliance with their procedures simply does not turn on the condition of the Busti Avenue Houses. Thus, any information about the

condition of the Busti Avenue Houses from the inspection will not be relevant to the issues raised in this proceeding. As such, the Record should remain closed, and Petitioner's Photographs should not be considered by the Court in evaluating Petitioner's claims.

## **CONCLUSION**

It is respectfully submitted that, for all of the reasons set forth above, and for those set forth in Respondents 8/13/12 Mem., Respondent's 9/7/12 Mem., Respondent's 9/21/12 Mem., and all supporting papers filed in this proceeding, the claims of the Campaign in its Petition must be dismissed in their entirety, and the Court should grant such other and further relief as it deems just and proper.

Dated: Buffalo, New York
       November 30, 2012

                        PHILLIPS LYTLE LLP

           By:      /s/ Kevin M. Hogan
                    Kevin M. Hogan, Esq.
                    Adam S. Walters, Esq.
                    Attorneys for Respondent
                    Buffalo And Fort Erie Public
                      Bridge Authority
                    3400 HSBC Center
                    Buffalo, New York 14203
                    Telephone No.: (716) 847-8400
                    khogan@phillipslytle.com
                    awalters@phillipslytle.com

Doc # 01-2621273.3